FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

99 NOV 19 PM 12: 25

U.S. DISTRICT COURT
N.D. OF ALABAMA

MICHELLE ORR,                          )
                                       )
        Plaintiff,                     )
                                       )
vs.                                    )   Civil Action No. CV-98-S-1037-NE
                                       )
HUNTSVILLE SERVICE                     )
CONTRACTORS, INC., d/b/a               )   **ENTERED**
MANPOWER TEMPORARY                     )
SERVICES,                              )   NOV 19 1999
                                       )
        Defendant.                     )

## MEMORANDUM OPINION

This action is before the court on defendant's motion for summary judgment and defendant's motion for leave to submit a reply brief in support of its motion for summary judgment.  Upon consideration of the motions, briefs, evidentiary submissions, and pleadings, defendant's motion for leave to submit a reply brief is due to be granted.  For the reasons discussed below, defendant's motion for summary judgment also is due to be granted.

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law." The movant bears the initial burden of showing
the court, by reference to materials on file, that no genuine
issues of material fact exist to be decided at trial. *See*
*generally Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct.
2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d
604 (11th Cir. 1991). The movant discharges this burden by showing
the court there is an absence of evidence to support the
non-movant's case. *See Jeffery v. Sarasota White Sox, Inc.*, 64
F.3d 590, 593 (11th Cir. 1995) *(per curiam)*. Rule 56 permits the
movant to discharge this burden with or without supporting
affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When
the moving party has discharged its burden, the non-movant must go
beyond the pleadings and designate specific facts showing there is
a genuine issue for trial. *See Jeffery*, 64 F.3d at 593.

In deciding whether the movant has met its burden, the court
is obligated to draw all inferences from the evidence presented in
the light most favorable to the non-movant and, also, to resolve
all reasonable doubts in that party's favor. *See generally Spence*
*v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor
of the non-movant are not unqualified, however. "Mere general
allegations which do not reveal detailed and precise facts will not

2

prevent the award of summary judgment." *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

3

With the foregoing standards in mind, the following facts either are not disputed, or are stated in a light most favorable to plaintiff.

## II. FACTUAL BACKGROUND

Defendant provides temporary employees to other companies. (See Williams aff. ¶ 4.)   In April of 1997, plaintiff sought employment through defendant's branch office in Decatur, Alabama. (See Orr depo. at 26-27.)   She was hired by defendant to provide temporary services for the General Electric Company ("GE") at its plant in Decatur.   (See id. at 29-30.)   Specifically, defendant hired plaintiff to perform "light industrial work," which entailed assembling appliance doors.   (See id. at 69.)

Plaintiff attended an orientation session conducted by one of defendant's supervisors, Richard Butler, on the evening of April 3, 1997.   (See id. at 29, 42.)   Plaintiff described the orientation atmosphere as "friendly" and "casual."   (Id. at 35.)   At the conclusion of the session, plaintiff asked Butler whether GE was hiring permanent employees:

> Q.   What did he tell you if you recall? You asked him about the possibility of permanent employment. You asked him about the possibility of being hired as a temporary, what were your chances. I wasn't quite sure what this conversation was.

4

A.    Being hired on permanently with GE.

Q.    Okay.  And what was his response?

A.    He said, you're smart, you know how to play the
game.  He said –

Q.    Did you respond to that?  Did you make a response?

A.    Not that I remember.

. . .

Q.    What did he then do?

A.    He continued to talk.

Q.    What did he say?

A.    He said to make sure -- he said to make sure that I
got what I was looking for before I dropped my pants.[1]

Q.    What did you say?

A.    I don't remember my response.  I was in shock.

(*Id.* at 40-41.)    Plaintiff considered this conversation

"inappropriate," and felt that Butler "left it real open-ended who

I could sleep with to get a job."  (*Id.* at 44.)  As discussed

below, plaintiff did not lodge a complaint about Butler's

statements until April 9, 1997.  (*See id.* at 44.)

Plaintiff first reported to work at the GE plant on Tuesday,

April 8, 1997.  (*See id.* at 47.)  She initially reported to another

---

[1] In her complaint, plaintiff alleges Butler told her that gaining a
permanent position with GE would be a "done deal" if she "dropped [her] pants."
(Complaint ¶ 10.)

5

of defendant's supervisors, Keith Walker, to receive her specific work assignment. (*See id.* at 55.)

Defendant maintained a trailer at the site of GE's Decatur plant, for the purpose of managing its employees who were assigned to work there. Upon entering the trailer, plaintiff overheard part of a telephone conversation between Walker and a permanent GE employee. Plaintiff concluded from statements she overheard Walker make on his end of the line that the GE employee was asking Walker to assign "a woman with shorts" to a particular job. (*See* Orr depo. at 55.) Specifically, plaintiff claims she heard Walker say that "there were blond women available, but that a specific woman wearing shorts was not." (Complaint ¶ 11.) At the conclusion of that call, Walker escorted plaintiff to her work area within the GE plant. (*See id.* at 69.) The evidence reflects that nothing was said by plaintiff to Walker, nor by Walker to plaintiff, concerning the subject of that part of the telephone conversation overheard by plaintiff.

Plaintiff worked at the GE plant the remainder of that day, but only part of the following day, April 9, 1997. (*See id.* at 69-77.) Plaintiff said that a GE employee working alongside her during her brief stint at the GE plant was responsible for

6

instructing her on specific job duties. (*See id.* at 71.)
According to plaintiff, a number of co-workers questioned that GE
employee about her.

    Q.    What happens then that you found offensive?

    A.    Everybody asked questions about you, everybody. Who
is she, is she married, is she single, those kinds of
things. You're definitely scrutinized.

    Q.    Who was asking these questions?

    A.    Other employees of this gentleman over here. Not me
directly.

    . . .

    Q.    What kind of questions do they want to know? What
kind of questions were they asking?

    A.    Is she married, is she single, does she have a
boyfriend, does she have kids, how old is she, those kind
of things.

(*Id.* at 71-72.)

    Plaintiff also said that GE co-workers made sexual comments
about, or directly to her during her short tenure on the job.

    Q.    What else did you find that contributed to this
atmosphere you describe?

    A.    Walking around in the plant, cat calls.

    Q.    What is a cat call, please?

    A.    A sexual comment.

    Q.    Such as, please?

7

A.   Comments about the way you walk, about parts of your anatomy.

Q.   What did they say?

A.   Look at the ass on her.

. . .

Q.   Were these directed to you?

A.   Yes, ma'am.

. . .

Q.   What did they say?

A.   Where are you from, do you have a boyfriend, do you date, do you date outside your race, those kinds of things.  And by first break I had had it, and I left.

(*Id.* at 74-75, 77.)[2]

Plaintiff left the GE plant after her first break on the second day on the job, April 9, 1997, because she was "offended," and felt that she would not be left alone to do her job.  (*See id.* at 77-78.)

After returning home on April 9th, plaintiff telephoned defendant's office in Decatur to complain about the work environment to which she had been subjected.  (*See id.* at 47.)

_____

[2] In her Equal Employment Opportunity Commission charge and her complaint filed with this court, both discussed *infra*, plaintiff failed to mention the behavior of her co-workers at the GE plant.  Construing all facts in the light most favorable to the plaintiff, however, the court will consider plaintiff's testimony as to the work conditions within the plant in ruling on defendant's motion for summary judgment.

8

Ellen Williams, defendant's branch supervisor, returned plaintiff's call later that afternoon. (See id. at 48.) Williams met with plaintiff the following day, April 10, 1997, and filed a written account of her allegations. (See id. at 49.) Williams told plaintiff she would speak with Butler and Walker, and counsel them if necessary. (See id. at 59.) Plaintiff inquired about other positions available through defendant. (See id. at 60.) Williams told plaintiff that a warehouse position with another company was available, but that "[s]he didn't feel comfortable sending [plaintiff] there," because only males worked in the warehouse.[3] (Id. at 60.) Plaintiff said Williams nevertheless promised "to do her best" to find plaintiff other employment. (Id. at 64.)

Plaintiff alleges she telephoned defendant's office three or four times over the next two weeks to inquire about other positions (see id. at 65-66), but she received no other work assignments. (See id. at 67.) Williams says, however, that "[w]hen temporary employees call in, their names are entered on a sheet (the 'call-in sheet') maintained by the customer service representatives ('CSR's')." (Williams aff. ¶ 7.) Plaintiff's name is not listed

---

[3] Plaintiff stated that she satisfied all relevant job requirements for this position, in terms of lifting ability and stamina. (See Orr depo. at 60-62.)

9

on any of defendant's call-in sheets from April 14, 1997 through

June 18, 1997. (*See* Williams depo. at Exhibit "6.") Williams

further stated that "the CSR's responsible for filling the

positions had no knowledge of Ms. Orr's complaints [regarding

sexual harassment]." (*Id.* ¶ 14.)

Plaintiff filed a charge of sex discrimination with the Equal

Employment Opportunity Commission on June 13, 1997. (*See*

Defendant's evidentiary submissions in support of its motion for

summary judgment, at Exhibit "C.") Plaintiff focused her claim on

the two incidents with Butler and Walker, as well as her failure to

be called by defendant regarding other employment from the time she

met with Williams. (*See id.*) Plaintiff received a right-to-sue

letter from the EEOC on January 30, 1998 (complaint ¶ 8), and filed

this action on April 29, 1998.

### III. DISCUSSION

The allegations in plaintiff's complaint mirror those set

forth in her EEOC charge. (*See id.* ¶¶ 9-16.) She contends

defendant violated Title VII of the Civil Rights Act of 1964, as

amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.*,

by subjecting her to sexual harassment that, "had she remained

employed at GE, was sufficiently severe or pervasive to alter the

10

conditions of plaintiff's employment and create an abusive and hostile working environment." (Complaint ¶ 17 (emphasis supplied).) Plaintiff also claims retaliation for her protest of defendant's unlawful employment practices. (See id. ¶ 19.) The court addresses each claim in the discussion below.

## A.   Plaintiff's Hostile Work Environment Claim

Title VII makes it unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ....

42 U.S.C. § 2000e-2(a)(1). In *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court concluded that "[t]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment." *Id.* at 64, 106 S.Ct. at 2404 (quoting *Los Angeles Department of Water and Power vs. Manhart*, 435 U.S. 702, 707, 98 S.Ct. 1370, 1374, 55 L.Ed.2d 657 (1978)). Encompassed within that "spectrum" is the right of individuals to work in an environment that is not discriminatorily hostile or abusive. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295

11

(1993). According to the *Harris* court:

> When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Title VII is violated.

*Id.* (quoting *Meritor Savings Bank*, 477 U.S. at 65, 106 S.Ct. at 2405) (internal citations omitted).

The Eleventh Circuit recently summarized the elements a plaintiff must allege to state a claim for gender discrimination based on a sexually hostile work environment:

> (1) the employee must belong to a protected group; (2) the employee must have been subject to unwelcome sexual harassment; (3) the harassment must have been based on sex; (4) <u>the harassment must have been sufficiently severe or pervasive to alter the conditions of employment</u>; and (5) there must be a basis for holding the employer liable for the harassment either directly or indirectly.

*Mendoza v. Borden, Inc.*, 158 F.3d 1171, 1175 (11th Cir. 1998) (emphasis supplied). The Supreme Court reiterated in *Harris* that Title VII liability for a sexually hostile work environment "takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Harris*, 510 U.S. at 21, 114 S.Ct. at 370.

A plaintiff must show not only that she <u>subjectively perceived</u> her work environment to be hostile, but also that the conduct

12

creating this environment was sufficiently severe or pervasive to

make her perception <u>objectively reasonable</u>:

> Conduct that is not severe or pervasive enough to create
> an objectively hostile or abusive work environment—an
> environment that a reasonable person would find hostile
> or abusive—is beyond Title VII's purview. Likewise, if
> the victim does not subjectively perceive the environment
> to be abusive, the conduct has not actually altered the
> conditions of the victim's employment, and there is no
> Title VII violation.

*Id.* at 21-22, 114 S.Ct. at 370. The *Harris* court went on to

pinpoint a number of factors, none of which are dispositive, that

aid in determining whether a work environment is hostile to the

extent that Title VII is violated:

> These may include the <u>frequency</u> of the discriminatory
> conduct; its <u>severity</u>; whether it is <u>physically</u>
> <u>threatening or humiliating, or a mere offensive</u>
> <u>utterance</u>, and whether it <u>unreasonably interferes with an</u>
> <u>employee's work performance</u>.

*Id.* at 23, 114 S.Ct. at 371 (emphasis supplied) (concluding that

whether a work environment is hostile depends on an analysis of

"all the circumstances"). According to the Eleventh Circuit in

*Mendoza*, "'[a] hostile environment claim is a single cause of

action rather than a sum total of a number of mutually distinct

causes of action to be judged each on its own merits ....'"

*Mendoza*, 158 F.3d at 1176 (quoting *Vance v. Southern Bell Telephone*

*& Telegraph Company*, 863 F.2d 1503, 1510-11 (11th Cir. 1989)).

13

    With the foregoing standards in mind, this court has analyzed
whether Butler's comments to plaintiff, Walker's statements to a GE
employee during a telephone conversation overheard by plaintiff,
and the behavior of plaintiff's GE co-workers, considered as a
whole, created a sexually hostile work environment in violation of
Title VII, and concludes they did not.

    Indeed, plaintiff's claim fails because she has not shown that
any harassment to which she was subjected was sufficiently "severe
or pervasive ... to alter the terms and conditions of employment."
*Mendoza*, 158 F.3d at 1175.   Rather, plaintiff's complaint focuses
on a few, isolated incidents of "merely offensive" conduct, which
is not actionable under Title VII.   *See Harris*, 510 U.S. at 21, 114
S.Ct. at 370.   "Title VII does not attempt 'to purge the workplace
of vulgarity ....'" *Hopkins v. Baltimore Gas and Electric Company*,
77 F.3d 745, 753 (4th Cir. 1996) (quoting *Baskerville v. Culligan
International Company*, 50 F.3d 428, 430)).   When enacting Title
VII, Congress did not "expect employers to purify the language in
the workplace or remove all vulgarity or coarse comments." *Johnson
v. Hondo, Inc.*, 940 F. Supp. 1403, 1410 (E.D. Wis. 1996).

    The factors pinpointed by the Supreme Court in *Harris* counsel
against retaining plaintiff's hostile work environment claim in

14

this action. Plaintiff did not remain at her job long enough to establish that the allegedly discriminatory conduct was pervasive.

When courts speak of discriminatory conduct being "pervasive," they employ that term in both a spatial and temporal sense. In other words, "pervasive" refers not only to acts that are spread throughout a plaintiff's work environment, but also (and more importantly) to acts that occur with some degree of frequency over time.

Plaintiff's evidence fails miserably when addressing the temporal prong. Fewer than six days elapsed between plaintiff's attendance at defendant's April 3, 1997 orientation session for temporary employees assigned to the GE plant and her "walk-out" at the first break on April 9, 1997. Plaintiff worked less than two days on the GE assembly line. Although plaintiff alleges that discriminatory comments were rampant during her brief stint of employment, this claim does not comport with binding Eleventh Circuit precedent. See Mendoza, 158 F.3d at 1173, 1175 (supervisor "constantly" followed plaintiff around the office, stared at her, and looked her "up and down in a sexually suggestive manner" for sixteen months); Fleming v. Boeing Company, 120 F.3d 242, 244 (11th Cir. 1997) (temporary employee of defendant claimed sexual

15

harassment by supervisor over <u>two year period</u>).

Plaintiff implicitly acknowledges that her exposure to the allegedly discriminatory conduct was <u>not</u> pervasive in a temporal sense when she alleges that "the conduct to which she was exposed, <u>had she remained employed at General Electric</u>, was sufficiently severe or pervasive to ... create an abusive and hostile working environment." (Complaint ¶ 17 (emphasis supplied).)

In sum, the conduct of which plaintiff complains was not "pervasive" as a matter of law. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (noting that "off hand comments" and "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment"); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987) (to be deemed pervasive, the conduct must be more than episodic; it must be sufficiently continuous and concerted), *overruled on other grounds by Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2362, 105 L.Ed.2d 132 (1989).

Moreover, the evidence does not demonstrate that the conduct of which plaintiff complains was sufficiently "severe" to warrant liability under Title VII. The comments directed toward plaintiff

16

by Richard Butler, together with those overheard by plaintiff during Keith Walker's telephone conversation with a GE employee, lack the numerosity, intensity, and "shock value" elements recognized by the Eleventh Circuit as indicative of a hostile work environment. *See, e.g., Mendoza*, 158 F.3d at 1175-76 (supervisor stared at plaintiff constantly; looked her up and down in a sexually suggestive manner; stared at her groin area while making sniffing sounds; and rubbed his hip against hers, while touching plaintiff's shoulders); *see also, e.g., Equal Employment Opportunity Commission v. Beverage Canners*, 897 F.2d 1067, 1068 n.3 (11th Cir. 1990).[4]

---

[4] In *Beverage Canners*, the Eleventh Circuit affirmed the trial court's finding of a racially hostile work environment based on the following facts:

> [The plant manager] and Bennett Achins, a supervisor at the plant, frequently made flagrant, revolting, and insulting racially derogatory remarks towards and in the presence of blacks.

. . .

> [The plant manager] used such language as: "niggers," "ignorant niggers," and "swahilis." The record also shows that Windholtz said "blacks were meant to be slaves" and were of lower intelligence. He proclaimed that "[t]hose niggers out there will not get anywhere in this company."

. . .

> We uphold the trial court's findings that "the numerous racial epithets were not made sporadically, accidentally, or as part of a casual conversation" and that management was informed but did nothing to correct the situation.

*Beverage Canners*, 897 F.2d at 1068, n.3, 1070.

17

At worst, plaintiff was subjected to a few offensive utterances while employed by defendant, but none rose to the level of "physically threatening or humiliating" conduct. Certain comments plaintiff complains of, like Walker's telephone conversation, were not even directed toward her.

The weight of plaintiff's deposition testimony indicates that she deemed Butler's comments "inappropriate" (Orr depo. at 43-44), and the behavior of her co-workers "offensive" and "humiliating." (Orr depo. at 71, 84.) The Supreme Court has stated, however, that the "mere utterance" of sexually explicit epithets and derogatory statements "which engender offensive feelings in an employee" is not actionable. *Meritor Savings Bank*, 477 U.S. at 67, 106 S.Ct. at 2405 (quoting *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971)).

Furthermore, plaintiff has not demonstrated that the allegedly discriminatory conduct unreasonably interfered with her work performance. Simply put, plaintiff did not remain on the job long enough to suffer any interference with her work performance. The court recognizes that plaintiff attributes her decision to resign her temporary employment to the work environment within the GE plant. Plaintiff made no effort to alleviate the working conditions during the one and one-half days she spent on the job,

18

however. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 645 (11th Cir. 1997) (plaintiff asked supervisor to stop giving her harassing correspondence, and then threatened legal action against supervisor); *Fleming*, 120 F.3d at 247 (temporary employee asked supervisor to stop making sexual comments and touching her).

Based on the factors delineated by the Supreme Court in *Harris*, this court finds that plaintiff has failed to show that a reasonable person would deem the conduct of which she complains sufficiently severe or pervasive to constitute a sexually hostile working environment.[5]

**B.    Plaintiff's Retaliation Claim**

Title VII also prohibits discrimination based on an employee's decision to pursue legally-protected rights. According to 42 U.S.C. § 2000e-3(a):

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ...

---

[5] Plaintiff directly mentions a *quid pro quo* sexual harassment claim for the first time in her memorandum in opposition to defendant's motion for summary judgment, based on the comments made by Butler. (*See* plaintiff's memorandum in opposition to defendant's motion for summary judgment, at 15-18.) While a claim of this nature reasonably could be inferred from plaintiff's EEOC charge, it is not strong enough to survive summary judgment. *See Griffin v. Carlin*, 755 F.2d 1516, 1532 (11th Cir. 1985) (concluding that issues that may be raised in Title VII complaint include those "that may reasonably be expected to grow out of the administrative investigation of [plaintiff's] claims").

Plaintiff made no indication that Butler has any influence over GE's hiring process. In short, plaintiff has adduced no evidence, other than Butler's open-ended statement, that gives this court any basis to conclude that she has an actionable Title VII claim based on *quid pro quo* harassment.

because he has <u>opposed</u> any practice made an unlawful
employment practice by this subchapter [<u>the so-called
opposition clause</u>], or because he has made a charge,
testified, assisted, or <u>participated</u> in any manner in an
investigation, proceeding, or hearing under this
subchapter [<u>the so-called participation clause</u>].
[Emphasis supplied.]

To establish a *prima facie* case of retaliation under either
the opposition or the participation clause of § 2000e-3(a), a
plaintiff must show three things: (1) statutorily protected
expression or activity; (2) an adverse employment action; and (3)
a causal linkage between the protected conduct and the adverse
action. *See, e.g.*, *Goldsmith v. City of Atmore*, 996 F.2d 1155,
1163 (11th Cir. 1993) (outlining Title VII retaliatory discharge
framework). When the retaliation claim is based, as here, upon the
opposition clause of § 2000e-3(a), however, the Eleventh Circuit
requires a plaintiff to demonstrate that any acts committed, or
statements made, when protesting an allegedly unlawful employment
practice were both subjectively and objectively reasonable;
otherwise, as a matter of law, the acts or statements will not be
deemed "statutorily protected."

    A plaintiff engages in 'statutorily protected activity'
    when he or she protests an employer's conduct which is
    actually lawful, so long as he or she demonstrates "a
    good faith, reasonable belief that the employer was
    engaged in unlawful employment practices." *Little v.
    United Technologies, Carrier Transicold Division*, 103

20

> F.3d 956, 960 (11th Cir. 1997). However, it is
> <u>insufficient</u> for a plaintiff "to allege his belief in
> this regard was <u>honest and bona fide</u>; <u>the allegations and</u>
> <u>record must also indicate that the belief, though perhaps</u>
> <u>mistaken, was objectively reasonable</u>." *Id.*

*Harper v. Blockbuster Entertainment Corporation*, 139 F.3d 1385,

1388 (11th Cir. 1998) (emphasis supplied).[6]

The dispositive question here concerns whether plaintiff's

belief — even if it was "honest and bona fide" — was "objectively

reasonable." This court concludes it was not. A reasonable person

would not consider the conduct of which plaintiff complains

unlawful under Title VII.

This conclusion comports with the facts described above, as

well as the substantive law on record at the time plaintiff filed

her claim. *See Clover v. Total System Services, Inc.*, 176 F.3d

1346, 1351 (11th Cir. 1999) ("The objective reasonableness of an

employee's belief that her employer has engaged in an unlawful

---

[6] In *Little*, the Eleventh Circuit elaborated on the policy reason behind
this test:

> A plaintiff, therefore, need not prove the underlying discriminatory
> conduct that he opposed was actually unlawful in order to establish
> a *prima facie* case and overcome a motion for summary judgment; such
> a requirement "[w]ould not only chill the legitimate assertion of
> employee rights under Title VII but would tend to force employees to
> file formal charges rather than seek conciliation of informal
> adjustment of grievances."

*Little*, 103 F.3d at 960 (quoting *Sias v. City Demonstration Agency*, 588 F.2d 692,
695 (9th Cir. 1978)). *Accord Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1501
(11th Cir. 1990).

21

employment practice must be measured against existing substantive law.") Again, the substance of plaintiff's complaint focuses on an open-ended offensive statement by Butler, her interpretation of statements made by Walker to a GE employee during a telephone conversation, and certain statements by GE co-workers, made either in her presence or directly to her. Binding precedent makes it undoubtedly clear that such allegedly discriminatory conduct was neither sufficiently severe nor pervasive to create a hostile work environment in violation of Title VII. *See* discussion *supra* in section III.A. Because plaintiff has failed to establish that she engaged in statutorily protected expression or activity, she cannot make out a *prima facie* case of unlawful retaliation under the opposition clause of 42 U.S.C. § 2000e-3(a). Thus, that claim also is due to be dismissed.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is due to be granted. An order consistent with this memorandum opinion shall be issued contemporaneously herewith.

DONE this 19th day of November, 1999.

United States District Judge

22